```
            IN THE UNITED STATES DISTRICT COURT FOR
           THE DISTRICT OF MARYLAND, NORTHERN DIVISION
```

|  |  |
|---|---|
| KNOWLEDGE BOOST, LLC, *et al.* | \* |
| Plaintiff, | \* |
| v. | CIVIL NO.: WDQ-09-0936 |
| SLC CALIFORNIA, LLC, *et al.* | \* |
| Defendant. | \* |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Lee C. Sorensen ("Sorensen") and Knowledge Boost, LLC ("Knowledge Boost") sued SLC California, LLC ("SLC California") and others[1] on various tort, contract, and California statutory claims. Pending is the Defendants' motion to dismiss some of the claims. For the following reasons, the Defendants' motion will be granted.

I.   Background[2]

In October 2007, Sorensen negotiated to buy seven Sylvan Learning Centers in Southern California. Compl. ¶¶ 8, 10. Representatives of SLC California, Sylvan Learning, Educate, and SLC were involved in the negotiations. *Id*. ¶ 8. In December

---

[1] The three other defendants are Sylvan Learning Centers, LLC ("SLC"), Sylvan Learning, Inc. ("Sylvan Learning"), and Educate, Inc. ("Educate").

[2] For the pending motion, the well-pleaded allegations in the Complaint are accepted as true. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

2007, Sorensen formed Knowledge Boost to buy the Centers. *Id*. ¶ 9.

In discussions with Sorensen during February 2008, Peter Cohen ("Cohen"), Greg Helwig ("Helwig"), Alan Schroder ("Schroder") and other Center representatives[3] told Sorensen that the Centers' staff was important to the success of the business. *Id*. ¶ 21. Sorensen was not permitted to interview many of the Centers' employees before the agreement because of the Defendants' confidentiality concerns. *Id*. ¶¶ 21-22. On February 28, 2008, SLC California agreed to sell seven Sylvan Learning Centers located in Southern California[4] to Knowledge Boost for $1.6 million in an Asset Purchase Agreement ("APA"). *Id*. ¶¶ 10-11. The APA expressly warranted that the Profit and Loss Statements were accurate, there were no known or threatened legal actions, and the business was lawfully operated. *Id*. ¶ 12. The Closing was scheduled for April 16, 2008, and Sorensen executed a promissory note, personally guaranteeing the contract. *Id*. ¶¶ 10-11.

---

[3] "Center representatives" are referred to in the complaint as "Sylvan employees," "Sylvan representatives," and "Sylvan." "Sylvan" is also used throughout the complaint to refer to the defendants collectively.

[4] Three Centers were located in Orange County (Mission Viejo, Laguna Niguel, and Irvine), and four Centers were in and around San Diego (Mira Mesa Boulevard, Del Mar Heights, Bernardo Center, and Oceanside Boulevard). Compl. ¶ 10.

Before the Closing, during the "Feasibility Period," Knowledge Boost inspected the business, reviewed Center financials, and interviewed Center directors. Def. Mot. Ex. A ("APA")[5] ¶ 4.1; Compl. ¶¶ 13, 16, 18, 22.  Sorensen was not permitted to interview other employees.  *Id*. ¶ 22.

During the Feasibility Period, Rachel Killeen and Jane Stringer said that they could not legally provide employee personnel files to Sorensen.  Compl. ¶¶ 19, 22.  Under the APA, SLC California promised to provide Knowledge Boost with a list of "all full-time and part-time employees" and their "rate of compensation, benefits, date of hire, and other related employee data."  APA ¶ 7.2.  When Sorensen asked about staff problems, Killeen and Stringer said the Centers' financial performance showed that there were no "red flags" or problems with key Center personnel.  Compl. ¶ 20.  Through their evaluations during the Feasibility Period, Sorensen and Knowledge Boost

---

[5] When deciding a motion to dismiss, the Court may consider "written documents referred to in the complaint and relied upon by the plaintiff in bringing the civil action."  *HQM, Ltd. v. Hatfield*, 71 F. Supp. 2d 500, 502 (D. Md. 1999) (*citing New Beckley Min. Corp. v. International Union, United Mine Workers of Ameri*, 18 F.3d 1161, 1164 (4th Cir. 1994)); *accord Maryland Minority Contractor's Ass'n, Inc. V. Maryland Stadium Auth.*, 70 F. Supp. 2d 580, 592 n.5 (D. Md. 1998) ("When a . . . complaint relies on documents not provided with that complaint, the defendant may on motion to dismiss provide them for the court's consideration.").  As Knowledge Boost and Sorensen rely on the APA, this Court considered the copy of the agreement attached to the Defendants' motion to dismiss.

relied on the information provided by Center representatives. *Id*. ¶¶ 23, 38.

After the Closing, Knowledge Boost learned that during the Feasibility Period, Center representatives had intentionally hidden information about poor employee performance and fraudulent accounting. *Id*. ¶¶ 25, 27, 29, 32, 33. The Centers had been instructed--and given financial incentives--not to terminate any Center Directors or mention performance problems and fraud investigations. *Id*. ¶¶ 26, 33, 34.

As a result of fraudulent billing at the Laguna Niguel Center before the sale, Knowledge Boost had to reimburse student accounts for improper charges. *Id*. ¶¶ 25, 27, 28. Soon after Closing, several employees at the successful Mission Viejo Center resigned because of their inability to work with the Center Director; this caused a severe decline in enrollment and sales at that Center. *Id*. ¶ 29-31. Knowledge Boost later learned that the Mission Viejo Center Director had been on a "corrective action plan" before and during the Feasibility Period to remedy staffing and enrollment problems caused by her poor performance. *Id*. ¶ 32.

Knowledge Boost relied upon representations about the success and good performance of the Laguna Niguel and Mission Viejo Centers. *Id*. ¶ 31. However, from April 2008 to April 2009, these Centers had lost more than $330,000.00 in revenue.

4

*Id*. ¶ 37.  Knowledge Boost thought these Centers would finance improvements needed in the underperforming San Diego Centers. *Id*. ¶ 35.  Had they known about the fraudulent accounting and deficient employee performance, Knowledge Boost would not have entered the APA, and Mr. Sorensen would not have guaranteed it. *Id*. ¶¶ 35, 38.

In March 2009, Knowledge Boost requested rescission of the sale, but Center representatives refused.  *Id*. ¶ 39.  On May 14, 2009, Knowledge Boost and Sorensen sued SLC California, Sylvan Learning, SLC, and Educate, on various tort, contract, and California statutory claims.  Paper No. 1.  On June 22, 2009, the Defendants moved to dismiss some of the claims.  Paper No. 5.

II. Analysis

The Defendants have moved to dismiss Sorensen's claims because he lacks standing to sue.  They have also moved to dismiss Knowledge Boost's tortious interference, conspiracy, negligent misrepresentation, intentional misrepresentation and California Franchise Investment and Unfair Competition Law claims.

    A.    Standards of Review

        1.    Rule 12(b)(1)

Claims will be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction if a party lacks standing.  *See Pitt*

*County v. Hotels.com, L.P.*, 553 F.3d 308, 312 (4th Cir. 2009). To satisfy the Article III standing requirement, "the party invoking federal court jurisdiction must show that (1) it has suffered an injury in fact, (2) the injury is fairly traceable to the defendants' actions, and (3) it is likely, and not merely speculative, that the injury will be redressed by a favorable decision." *Long Term Care Partners, LLC v. United States*, 516 F.3d 225, 230-31 (4th Cir. 2008) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  When the Court evaluates standing under Rule 12(b)(1), it must accept the allegations as true and construe them in the light most favorable to the plaintiff.  *Proctor v. Metropolitan Money Store Corp.*, 579 F. Supp. 2d 724, 730 (D. Md. 2008) (*citing Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).  Jurisdictional questions must be resolved before deciding whether the plaintiff has stated a claim.  *Id*. at 730 n.10.

        2.   Rule 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To present a facially plausible complaint, a plaintiff must do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts as pleaded must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" the plaintiff is entitled to relief. *Id*. at 1950 (*citing* Fed. R. Civ. P. 8(a)(2)). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Id*. (internal quotation marks omitted).

The Court "should view the complaint in a light most favorable to the plaintiff," and "accept as true all well-

7

pleaded allegations," *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "allegations that are mere[] conclus[ions], unwarranted deductions of fact, or unreasonable inferences," *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

B.  Standing

The Defendants argue that Sorensen lacks standing to sue because he was neither a party to--nor a third-party beneficiary of--the APA; thus, he has suffered no injury "separate or distinct from the alleged injury of Knowledge Boost." Def.'s Mot. 9. Sorensen contends that he was injured by the Defendants' tortious conduct. Pl.'s Opp. 8.

To show injury in fact, the plaintiffs must allege "an invasion of a legally protected interest which is concrete and particularized, as well as actual and imminent." *Friends of the Earth, Inc. v. Gaston Copper Recycling, Corp.*, 204 F.3d 149, 154 (4th Cir. 2000) (*citing Lujan*, 504 U.S. at 560). Sorensen alleges that, but for the misrepresentation and concealment of material information about the Centers' business, he would not have created Knowledge Boost or personally guaranteed the APA. Pl.'s Opp. 8; Compl. ¶¶ 38, 43-44, 49-51, 57-59. His injuries are the expenses to form Knowledge Boost and his personal

liability on the APA guarantee. Sorensen seeks recovery only for his injuries and may sue.[6] Though he does have standing, all of Sorensen's claims against the Defendants will be dismissed as explained below.

C.   Choice of Law

"In a diversity action, [the] law of the forum court governs the substantive issues, and federal law governs the procedural issues." *Lampe v. Kim*, 105 Fed. Appx. 466, 468 (4th Cir. 2004) (*citing Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002)). Maryland's choice of law rules govern. *See id.; Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999). Maryland applies the *lex loci delicti* rule in tort cases. *Philip Morris, Inc. v. Angeletti*, 358 Md. 689, 744, 752 A.2d 200, 230 (2000). Under that rule, "when [a tort] occurs in another state[, the] substantive rights of the parties, even though they are domiciled in Maryland, are to be determined by the law of the state in which the alleged tort took place." *Id*. at 745, 752 A.2d at 230 (citation omitted). A tort occurs "where the injury was suffered, not where the wrongful act took place." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 511 (4th Cir. 1986). Here

---

[6] Defendants contend that shareholders cannot sue to recover for injuries suffered by a corporation. Pl.'s Mot. 9 (*citing Waller v. Waller*, 187 Md. 185, 189 (1946)). *Waller* is inapplicable because Sorensen is not asserting derivative claims.

9

the alleged injuries were suffered in California; therefore, California law applies to Counts I, II, III, IV, V, IX, and X.

D.   Failure to State a Claim

The Defendants argue that (1) the tort and statutory claims fail to allege how each defendant participated in the alleged wrongs, (2) the misrepresentation and fraud claims were not pled with particularity, and (3) the Plaintiffs have not pled facts supporting the elements of the claims.

1.   Vicarious Liability for Tort Claims

The Plaintiffs assert that the Defendants are vicariously liable for intentional misrepresentation (Counts I-III), tortious interference[7] (Counts IV-V), civil conspiracy (Count IX), and negligent misrepresentation (Count X).  *See* Pl.'s Opp. 10-14.  Vicarious liability is an issue of substantive tort law,[8] and all the alleged torts occurred in California; thus, California law will govern.[9]

Under California law, a principal is liable for torts committed by an agent, acting within the scope of his agency.

---

[7] Sorensen and SLC California are not parties to the tortious interference claims.

[8] Respondeat superior, or vicarious liability, is a principle of tort law. *James v. Prince George's County*, 288 Md. 315, 332, 418 A.2d 1173, 1182 (Md. 1980) (superseded by statute on unrelated issue).

[9] The Plaintiffs and Defendants have discussed federal and Maryland law theories of vicarious liability.  California law governs.

*See Baptist v. Robinson*, 143 Cal. App. 4th Supp. 151, 159, 49 Cal. Rptr. 3d 153, 160 (2006).  To state a claim for vicarious liability, Plaintiffs must plead (1) the existence of an agency relationship between each defendant and the tortfeasor; and (2) the agents were acting within the scope of their agency when they committed the alleged torts.

The existence and extent of an agency relationship are questions of fact, and the party asserting agency has the burden of proof.  *Inglewood Teachers Assn. v. Public Employment Relations Bd.*, 227 Cal. App. 3d Supp. 767, 780 278 Cal. Rptr. 228, 234 (Cal. Ct. App. 2 Dist. 1991).  An agency relationship exists when: (1) the agent holds the power to alter the legal relations of the principal; (2) the agent is a fiduciary in matters within the scope of agency; and (3) the principal has a right to control the agent in matters entrusted to him.  *Garlock Sealing Techs., LLC v. NAK Sealing Techs.*, 148 Cal. App. 4th Supp. 937, 964, 56 Cal. Rptr. 3d 177, 199 (Cal. Ct. App. 3 Dist. 2007).

Here, Plaintiffs have not pled an agency relationship between the Defendants and the tortfeasors.  The complaint refers generally to "Sylvan representatives" as tortfeasors.[10]

---

[10] Killeen, Stringer, Cohen, Helwig, and Schroder are referred to generally as "Sylvan representatives"--not agents or employees of any defendant entity.  Compl. ¶¶ 19, 21.  These

But the complaint does not allege that any tortfeasor is an agent of[11] or employed by[12] SLC California, Sylvan Learning, SLC, or SLC California.

Under *Twombly*, Plaintiffs may not simply list "everyone that *could have been* involved for every specific act that allegedly occurred." *Proctor v. Metropolitan Money Store, Corp.*, 579 F. Supp. 2d 724, 744 (D. Md. 2008). The complaint "do[es] not permit the court to infer more than a mere possibility of misconduct" by individual defendants. *Ashcroft*, 129 S. Ct. at 1950. Thus, the tort claims against the Defendants must be dismissed under Rule 12(b)(6).

       2.    Violations of California Franchise Investment and Unfair Competition Law

---

references do not cure the failure to allege the relationships necessary for vicarious liability.

[11] Arguing that individuals held themselves out as representing multiple defendant entities, Plaintiffs contend that the relationship between defendants and their representatives and the extent of each defendant entity's involvement is unclear and must be resolved through discovery. Pl.'s Opp. 12-14. If this is true, after discovery, Plaintiffs may amend the complaint to add defendants. But the existence and scope of an agency relationship cannot be based solely on a person's statements that he is an agent. *Howell v. Courtesy Chevrolet, Inc.*, 16 Cal. App. 3d Supp. 391, 401 94 Cal. Rptr. 33, 38 (Cal. Ct. App. 1971).

[12] The complaint alleges that "at all relevant times, Sylvan representatives acted within the scope of their employment with Sylvan and Sylvan is responsible for their acts, representations and omissions made in the scope of employment." Compl. ¶ 24. These allegations are merely legal conclusions which the Court need not accept as true. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Like the tort claims, the California Franchise Investment law (Count XI) and California Unfair Competition law (Count XII) claims are similarly deficient.  The California statutory claims are predicated on the same alleged misrepresentations and omissions of material information by "Sylvan representatives" that underpin the tort claims.  Because the Plaintiffs have not pled facts to establish the Defendants' liability for the acts of any of the alleged wrongdoers, these claims will also be dismissed under Rule 12(b)(6).

III.  Conclusion

For the reasons stated above, the intentional misrepresentation (Counts I-III), tortious interference (Counts IV-V), civil conspiracy (Count IX), negligent misrepresentation (Count X), California Franchise Investment law (Count XI) and California Unfair Competition law (Count XII) claims will be dismissed.

October 16, 2009   _____/s/_____
Date                William D. Quarles, Jr.
                    United States District Judge